FILED

2022 Sep-01  PM 03:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| GERRY POLLARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-00354-SGC |
| | ) | |
| PUBLIX SUPER MARKETS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Gerry Pollard alleges the Publix Pharmacy in Pinson, Alabama incorrectly filled his prescription in July 2018, and when he took that wrongly filled prescription, he was injured and hospitalized. (Doc. 1-1). Pollard filed a complaint against Publix Super Markets, Inc., in the Circuit Court of Jefferson County, Alabama, asserting claims for negligence and wantonness. (Doc. 1-1).[2] Publix timely removed the action to this court. (Doc. 1).

Presently pending is Publix's motion for summary judgment, which is fully briefed and ripe for adjudication. (Docs. 16, 23, 25). As explained below, Publix's motion for summary judgment is due to be granted in part and denied in part.

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 9).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

## I.    Standard of Review

Under Rule 56 of the *Federal Rules of Civil Procedure*, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, the non-moving party must go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome of the case will preclude summary judgment. *Id.* All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If

the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

## II.   Material Facts

Pollard suffers from high blood pressure, and he had taken carvedilol and hydralazine for years. (Doc. 16-1 at 27). Before July 18, 2018, the 6.25 mg carvedilol pills Pollard took were round, white, and stamped ZC40 on one side. (*Id.* at 22). The 100 mg hydralazine pills he took were bigger than the carvedilol and were round, pink, and stamped HP4 on one side. (*Id.* at 23). At some point, the carvedilol pills changed in size from a small to medium pill. (*Id.* at 22).

The first time he filled his carvedilol prescription, Pollard reviewed the paperwork that came with the medication. (*Id.* at 15). The paperwork included information about the potential side effects and risks of the carvedilol, but Pollard did not notice whether it also included a photograph and description of the carvedilol tablet. (*Id.* at 21). Likewise, when he first filled his hydralazine prescription at Publix, he reviewed the paperwork included with his medication. (*Id.* at 23). He observed the paperwork contained a picture of the round, pink pill that should be inside the hydralazine bottle. (*Id.* at 24).

In July 2018, Pollard requested a refill of carvedilol from a Publix pharmacy in Pinson, Alabama. (*Id.* at 13). When he requested his refill, he still had about a week's supply of carvedilol. (*Id.* at 14). The prescription order was processed,

verified, and dispensed by Publix pharmacy manager Charles Henckell on July 8, 2018. (Doc. 16-6 at 5). Henckell does not remember any issue or error during the filling of Pollard's carvedilol prescription. (*Id.*). According to Publix, the bottle's labeling included a description of the medication which stated: "Shape: round;" "Color: white;" "Side 1: ZC40."[3] (Doc. 16-10).

Pollard picked up his carvedilol prescription the following day. (Doc. 16-1 at 13-14). Other than confirming the name of the prescription, Pollard did not review any paperwork included with the medication. (*Id.* at 15).

Pollard opened his new bottle of carvedilol on the morning of July 18. (*Id.* at 15, 17). He took a pill out of the bottle and noticed it was a round, pink pill, slightly smaller than the hydralazine pill he also took that morning, and different from the small, white carvedilol pills he had previously taken. (*Id.* at 27, 28). He checked the name on his prescription bottle but otherwise did not explore why his carvedilol pill had changed in color or size. (*Id.* at 28). He did not further review the paperwork or contact Publix to see if the medication in his carvedilol bottle was correct. (*Id.*). Because Pollard had received the correct medication from Publix for some time, he trusted Publix to give him the correct pills and felt no need to verify what he had been given. (*Id.* at 49). When he saw the pill had changed shape and color, he thought

---

[3] Publix also contends the prescription receipt given to Pollard included this information, as well as a picture of the carvedilol pills; however, the receipt they submitted is dated May 9, 2018, about two months before this incident. (Doc. 16-11).

it was "another generic kind of pill because they change colors, they change shapes." (*Id.* at 49). In the past, pharmacies had not notified Pollard when his medication had changed color or shape. (*Id.* at 50).

Pollard ingested the round, pink pill from the carvedilol bottle and went to work. (*Id.* at 29). Within an hour, he began experiencing symptoms: he felt dizzy and lightheaded, his chest began hurting, his heart was beating fast, and his blood pressure was above 200. (*Id.* at 29). Paramedics came and took Pollard to the hospital. (*Id.* at 29).

Pollard claims the Publix pharmacist negligently and/or wantonly placed 50 mg hydralazine pills in a bottle labeled as 6.25 mg carvedilol. (Doc. 1-1 at 3-4).

## III.    Rule 56(d) Motion

Though he has not filed a separate motion and does not clearly state he seeks relief under Rule 56(d), Pollard argues he has not been permitted to fully engage in discovery and expects more information will lead to the discovery of facts to support his wantonness claim. (Doc. 23 at 8). Specifically, Pollard believes Publix has an inventory demonstrating it had a surplus of carvedilol. (*Id.* at 9).

If the party opposing a motion for summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," a court may defer consideration of the motion, deny the motion, allow additional time to obtain affidavits or declarations or to conduct discovery, or issue

any other appropriate order. Fed. R. Civ. P. 56(d). "The [party opposing summary judgment] may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but must show the court how the stay will operate to permit him to rebut, through discovery, the movant's contentions." *Barfield v. Brierton*, 883 F.2d 923, 931 (11th Cir. 1989) (internal quotation marks omitted). In other words, "[a] [Rule 56(d)] motion must be supported by an affidavit which sets forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998).

A court may deny a Rule 56(d) motion where the record indicates the party opposing a motion for summary judgment "had ample time and opportunity" to complete discovery but "failed to diligently pursue his options." *Barfield*, 883 F.2d at 932; *see also* 10B Fed. Prac. & Proc. Civ. § 2741 (3d ed.) ("[A] request for relief under Rule 56[(d)] is extremely unlikely to succeed when the party seeking the delay has failed to take advantage of discovery. The courts will not delay a case to allow discovery when the discovery sought could have been instituted earlier . . . ."). Ultimately, the grant or denial of a Rule 56(d) motion is within the sound discretion of the trial court. *Barfield*, 883 F.2d at 931.

The parties' deadline to conduct discovery expired in April 2021, and dispositive motions were due in May 2021. (Doc. 12). The court entered the

scheduling order in April 2020, giving the parties a year to engage in discovery. (*Id.*).

According to Publix, Pollard engaged in no discovery until January 2021, when he

served written discovery requests on Publix. (Doc. 25-1 at 3). Publix's counsel states

Pollard never sought to depose any party nor requested any documents relating to an

inventory taken at or around the time of this incident. (*Id.* at 3). Pollard has not

argued otherwise, and the court notes he did not seek an extension of either the

discovery or dispositive motion deadlines.

Publix moved for summary judgment in May 2021. (Doc. 16). Pollard did not

file his response until more than five months later in October 2021. (Doc. 23).

Pollard's objection to summary judgment was the first time Publix was aware of his

interest in obtaining an inventory. (Doc. 25-1 at 3-4).

"[A] party is not entitled to conduct further discovery under Rule 56(d) where

the absence of evidence is the result of that party's lack of diligence in pursuing such

evidence through permitted methods of discovery." *Egenberg v. Mainsail Digital,

LLC*, No. 2:21-CV-00026-JHE, 2022 WL 678472, at *1 (N.D. Ala. Mar. 7, 2022)

(citing *Barfield*, 883 F.2d at 932 (finding that no additional discovery should be

granted when the absence of information was due to the plaintiff's lack of

diligence)). The year-long discovery period had been closed for more than six

months when Pollard filed his response in opposition to summary judgment. He had

ample time to request documents. Further, even if the discovery period were still

open, Pollard has not demonstrated he is entitled to relief under Rule 56(d), which requires Pollard to show, by affidavit or declaration, he cannot present "facts essential to justify [his] opposition." *See* Fed. R. Civ. P. 56(d).

Therefore, to the extent Pollard's response to Publix's motion for summary judgment can be construed as including a motion under Rule 56(d), it is **DENIED**.

## IV.    Motion to Strike Construed as Objections

Following Pollard's opposition to the motion for summary judgment, Publix filed a motion to strike the affidavit of his daughter, Eboni Pollard. (Doc. 24). Pollard did not respond to the motion to strike, and the time to do so has expired. (*See* Doc. 10 at 5). On April 14, 2022, the court terminated the motion to strike and noted the grounds asserted in the motion would be treated as objections to the affidavit's admissibility. (Doc. 27). Thus construed, Publix objects to Ms. Pollard's affidavit for three reasons: (1) the substance of Ms. Pollard's affidavit is irrelevant to the issues raised in Publix's summary judgment motion; (2) Ms. Pollard expresses lay opinions she is not qualified to make; and (3) portions of the affidavit constitute hearsay.

The 2010 advisory committee's note to Rule 56(c)(2) provides: "[an] objection [under Rule 56(c)(2)] functions much as an objection at trial, adjusted for the pretrial setting. *The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.*" *Id.*

8

(emphasis added). Because he did not respond to Publix's objections, and the time to do so has expired, Pollard has failed to carry his burden to demonstrate the material is admissible now or could be admissible at trial. For this reason alone, Publix's objections may be sustained. But as explained below, Publix's objection to Ms. Pollard's affidavit on the basis of relevance is due to be sustained.[4]

Ms. Pollard's affidavit generally establishes the following facts. Pollard was hospitalized on July 18, 2018, because he took the wrong medication, which caused him to suffer from dizziness, lightheadedness, shortness of breath, headaches, and increased blood pressure. (Doc. 23-1 at 1-2). Ms. Pollard retrieved his medications from his home and took them to the hospital, where a doctor examined them. (*Id.* at 2). The doctors determined the pills in the carvedilol bottle were actually 50 mg hydralazine pills. (*Id.* at 2). A doctor called the Publix pharmacy and was told the pharmacy put the wrong medication in the carvedilol bottle. (*Id.* at 3).

The issues presently before the court are whether (1) Pollard has any evidence to support a finding that the pharmacist acted wantonly in filling his prescription, and (2) Pollard was contributorily negligent in failing to confirm his carvedilol pill was, in fact, carvedilol. Ms. Pollard's testimony about what happened after Pollard took the wrong medication is of no consequence in determining the issues of

---

[4] Because Ms. Pollard's affidavit is irrelevant to the issues raised on summary judgment, the court declines to consider whether Ms. Pollard expressed impermissible opinions or hearsay. Publix may raise this issue again at or before trial.

wantonness or contributory negligence. *See* Fed. R. Evid. 401. Therefore, Ms. Pollard's affidavit is irrelevant and not admissible for purposes of resolving this motion. *See* Fed. R. Evid. 402.

Publix's objection to the affidavit of Eboni Pollard as irrelevant is **SUSTAINED**, and this memorandum opinion does not consider her affidavit.

## V.    Discussion

Publix requests this court enter summary judgment on both Pollard's claims for negligence (Count I) and wantonness (Count II). First, Publix argues Pollard has no evidence to support a finding that Henckell acted wantonly in filling the carvedilol prescription. Second, Publix contends that even if Henckell negligently filled the carvedilol prescription, Pollard's failure to determine why his carvedilol pill changed size and color constitutes contributory negligence and is thus a complete bar to recovery on his negligence claim.

### A.    Wantonness

Pollard alleges Publix wantonly provided him with medication not prescribed to him and wantonly failed to provide him with proper pharmaceutical care. (Doc. 1-1 at 4). Publix argues a pharmacist falls within the definition of "other health care provider" under the *Alabama Medical Liability Act* and therefore Pollard must prove his wantonness claim by substantial evidence. (Doc. 16 at 13). Publix further contends there is no evidence Henckell behaved wantonly when he filled Pollard's

prescription. (*Id.*).

Alabama law defines wantonness as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code § 6-11-20(b)(3). As explained by the Alabama Pattern Jury Instructions, a defendant's conduct is wanton if he "consciously acts or fails to act with a reckless or conscious disregard of the rights or safety of others, and [] is aware that harm will likely or probably result." 2 Ala. Pattern Jury Instr. Civ. § 29.00 (3d ed.). As explained by the Alabama Supreme Court:

> Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury.

*Carter v. Treadway Trucking, Inc.,* 611 So. 2d 1034, 1035 (Ala. 1992) (quotation marks omitted) (*overruled on other grounds by Robertson v. Gaddy Elec. & Plumbing, LLC*, 53 So. 3d 75 (Ala. 2010)). Of course, a plaintiff claiming wantonness need not prove the defendant had a "specific design or intent to injure" him. *Joseph v. Staggs*, 519 So. 2d 952, 954 (Ala. 1988).

In *Cackowski v. Wal-Mart Stores, Inc.*, the Alabama Supreme Court held, as to a claims against a pharmacy, a plaintiff must prove wantonness by substantial evidence. 767 So. 2d 319, 327 (Ala. 2000). In that case, the trial testimony demonstrated the pharmacist misread the prescription as calling for one medication

when it called for another. Because the prescribing doctor was an internist who concentrated in preventative medicine and because it was cold and flu season, the pharmacist did not find it unusual that the doctor would have prescribed the drug he mistakenly filled. Thus, the court held there was no evidence of wantonness because the pharmacist had no reason to be suspicious of what he thought the physician's prescription called for, nor did the pharmacist repeatedly misfill the medication. Instead, when the plaintiff returned for a refill and questioned the pharmacist about an unexpected side effect, the pharmacist became suspicious and discovered his own error.

On the other hand, in *Harco Drugs, Inc. v. Holloway*, the court affirmed a jury verdict finding a pharmacy wanton in misfilling a prescription. 669 So. 2d 878 (Ala. 1995). In that case, however, there was evidence (1) the prescription was illegible; (2) the pharmacist knew the prescribing physician was an oncologist; (3) the pharmacist gave the plaintiff a drug typically used to treat heart ailments when the prescription actually called for a cancer drug; (4) the pharmacist admitted she knew she was giving the plaintiff a heart medication; (5) the pharmacist did not call the physician to verify the prescription and did not ask the plaintiff why her oncologist was supposedly prescribing a heart medication; and (6) the pharmacist did not re-read the prescription to verify she read it accurately. *Id.* at 880.

Because Pollard bears the burden of proof at trial, Publix is not required to

wholly negate Pollard's claim on summary judgment but may simply demonstrate there is an absence of evidence to support it. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Given Publix has done so here, Pollard must respond in one of two ways: he must either "show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by [Publix], who has thus failed to meet the initial burden of showing an absence of evidence," or he "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *See id.*

He has not done so. Here, the only record evidence about the way the carvedilol prescription was filled comes from Publix's interrogatory responses. (Doc. 16-6 at 5). According to Publix, Henckell has no recollection of any issue or error that arose when he filled Pollard's carvedilol prescription. Viewing the evidence in the light most favorable to Pollard, the record suggests Henckell, at most, negligently filled the carvedilol prescription. There is simply no evidence from which to infer Henckell had any knowledge or reason to suspect he might be misfilling the carvedilol prescription. Because Pollard has not submitted any evidence suggesting Henckell acted more than negligently, he has not shown there is a triable issue of fact as to wantonness. Consequently, Publix is entitled to summary judgment on this claim (Count II).

### B.      Contributory Negligence

Publix argues Pollard had taken hydralazine and carvedilol for many years, was familiar with the appearance of each medication, and recognized the supposed carvedilol looked like a 50 mg hydralazine pill.[5] (Doc. 16 at 18).

Publix contends that because Pollard knew there were risks associated with taking these medications incorrectly, he was contributorily negligent when he took the pills without trying to verify the medication was correct. Pollard counters he took a pill he thought was 6.25 mg of carvedilol and thus the jury must determine whether he acted negligently. (Doc. 23 at 11).

Contributory negligence is an affirmative defense and a complete defense to a negligence claim; Publix must therefore establish on summary judgment "there is no genuine issue of material fact as to any element of that defense." *Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1273–74 (11th Cir. 2006); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986); *see also Serio v. Merrell, Inc.*, 941 So. 2d 960, 964 (Ala. 2006).

"[C]ontributory negligence is normally a question of fact and firmly in the realm of the jury." *Housley v. LiftOne, LLC*, No. 7:20-CV-00010-LSC, 2021 WL 4197596, at *11 (N.D. Ala. Sept. 15, 2021); *see also Gulledge v. Brown & Root,*

---

[5] While Publix presents evidence suggesting Pollard had previously been prescribed 50 mg of hydralazine, Pollard testified he had only ever taken 100 mg hydralazine pills. (Doc. 16-1 at 23).

*Inc.*, 598 So. 2d 1325, 1330 (Ala. 1992) ("[Q]uestions of negligence incorporate factual evaluations that are almost always within the province of the jury [and therefore] summary judgment based on the doctrine of contributory negligence is seldom proper."). A court may find contributory negligence as a matter of law only when "the facts are such that all reasonable people would logically have to reach the conclusion that the plaintiff was contributorily negligent." *See Serio*, 941 So. 2d at 964. To establish contributory negligence as a matter of law, Publix must establish by undisputed evidence that Pollard (1) put himself in danger's way and (2) had a *conscious* appreciation of the danger at the moment the incident occurred. *See Hannah v. Gregg, Bland & Berry, Inc.*, 840 So. 2d 839, 860–61 (Ala. 2002).[6]

Publix has not established by undisputed evidence that Pollard consciously appreciated there was any danger when he took what he thought was a carvedilol pill. The evidence shows Pollard was aware the supposed carvedilol pill looked different than the ones he taken in the past, but that is all the record establishes. Publix believes this means Pollard was—or should have been—aware the pill he took was not a carvedilol pill but was instead a 50 mg hydralazine pill. This

---

[6] This standard is different than the contributory negligence instruction given to a jury at trial. *See Hannah*, 840 So. 2d at 860. "A jury determining whether a plaintiff has been guilty of contributory negligence must decide only whether the plaintiff failed to exercise reasonable care." *Id.* The "conscious appreciation" standard protects against the inappropriate use of summary judgment to establish contributory negligence. *Id.* At trial, Publix must establish its contributory negligence defense by substantial evidence. *See Cackowski*, 767 So. 2d at 330.

reasoning requires an inference adverse to Pollard, which is inconsistent with the summary judgment standard.

Here, Pollard specifically testified he did not recognize the supposed carvedilol pill as being hydralazine. (Doc. 16-1 at 27). His carvedilol pills had previously changed appearance. (*Id.* at 50). Pollard checked the name on the carvedilol bottle before taking his medication, as he did every morning, but he was not aware the label listed the shape and color of the pill that should be inside the bottle—and he disputes his carvedilol bottle contained a description of the medication. (*Id.* at 28). Given these facts, Publix has not established by undisputed evidence that Pollard consciously appreciated the pill he took was not the pill he was prescribed.

Publix essentially argues Pollard *should have* doubted the pill was carvedilol because he realized the pill looked different, even though he had just taken it out of a bottle labeled carvedilol; therefore, he *should have* known the pill was hydralazine instead of carvedilol—or at least, he should have taken some action to confirm the pill was carvedilol. The standard for contributory negligence on summary judgment is not whether Pollard *should have* appreciated the risk but whether he *consciously* appreciated the risk. Publix's argument may persuade a jury, but it does not meet the summary judgment standard of demonstrating by undisputed evidence that Pollard consciously appreciated the risk associated with taking the medication.

Moreover, Publix cites no authority to permit this court to find, as a matter of law, that having picked up a prescription he previously filled many times at Publix, Pollard was required to affirmatively question the pharmacy about why the appearance of his pills changed. In the absence of authority definitively establishing a standard of care in this situation, the issue is for the jury. Here, a reasonable jury could find, realizing the supposed carvedilol pill looked different from the carvedilol pills he had taken in the past, the standard of care required Pollard to further investigate why this pill looked different. But a reasonable jury could also find under these circumstances that Pollard was not required to investigate whether the pills inside a bottle labeled "carvedilol" were, in fact, carvedilol. In either case, a jury must decide whether Pollard was entitled to rely on the bottle's labeling or whether he was required to investigate further. Consequently, Publix is not entitled to summary judgment on Pollard's claim for negligence.

## VI.   Conclusion

For the foregoing reasons, there are no genuine issues of material fact regarding Pollard's claim for wantonness, and Publix is entitled to judgment as a matter of law as to Count II. Because a genuine issue of material fact exists regarding Pollard's alleged contributory negligence, Publix is not entitled to judgment as a matter of law as to Pollard's claim for negligence (Count I). Accordingly, Publix's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

(Doc. 16).

      **DONE** this 1st day of September, 2022.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE